Bissell, J.,
delivered the opinion of the court.
In the winter of 1892 and 1898, Pilgrim was a Pullman car porter, working on a sleeper attached to a train running between Alamosa and Denver. One day in February the train to which this sleeper was attached reached Antonito and left there on its way for the trip. From Antonito for about forty miles the Rio Grande Railroad follows an up grade through the mountains until it reaches the divide at the top of the range. On that day Cole Lydon, the superintendent of the fourth division of the road, was on the train in the discharge of his duties. Before leaving Antonito he had been advised by some of the operators of a snow storm in the mountains, and he arranged the train for the purpose of making time and to overcome the difficulties which would result from the storm. The way in which the train was made up will be stated, though this is not deemed of very vital consequence. A good deal of stress was laid at the trial on this fact, and it is much discussed in the briefs,- and might possibly have had a good deal of influence with the jury. As we read the case, however, it was not a pivotal question, and it is only referred *88 to because an instruction based on it lacked some limitations which were requisite and important. There was an engine with a snow plow at the head of the train; behind this was a danger, and thereafter came two engines. The air controlling the brakes on the train was connected with the one in the rear. Behind the locomotives there was a baggage car, coach, the sleeper in question and a caboose, on which the superintendent was riding, and wherein were carried laborers to aid in a case of emergency. There was some testimony offered which tended to show that the use of a flanger between the forward locomotive and those attached for hauling purposes was a dangerous method of coupling a train, since the purpose of the flanger was to cut the snow out between the tracks, and running, as it necessarily must for this purpose, very close to the rails, was in danger of catching obstructions and causing accidents. The superintendent, however, and the engineers and conductors connected with the train, assert its frequent use in this manner and its safety and propriety. The plaintiff produced rules of the company in which directions were given with reference to the severance of a train into sections under some circumstances, and which, according to the testimony of the superintendent, could not well be done in a snow storm. This is likewise of little consequence, but it is stated because some reliance is placed on this fact in the argument. After the train left Antonito, it struck snow twenty-two or twenty-three miles before it reached the point of the accident, which was near what is called the “ Farrow Cut.” Just at that cut there is a very sharp curve of about 11/2 per cent, and the grade of the road at this point is about seventy-five feet to the mile. The plaintiff in his complaint charged that the accident was occasioned by the negligence of the company in running and operating its train, and charged that the accident happened in the cut which was on this curve. The plaintiff’s theory was that the accident was occasioned because the train was made up in this particular manner and run over this curve and through the cut filled with snow, and that by reason of such combination of *89 circumstances the cars were forced from the track. There is no question that the cars left the track, went down the embankment, and that the porter was carried with the sleeper to the bottom, was quite severely cut about the hip and suffered some loss of time and injury. The company does not question the amount of the judgment or the extent of the recovery in case the judgment should be affirmed. On the conclusion of the plaintiff’s case, as well as after the testimony was all in, the company requested the court to charge the jury to find for the defendants, and asked several instructions, which were refused, and gave others to which exceptions were taken. In discussing the case we will group the errors rather than discuss each, and state generally the reasons which influence us to reverse the judgment.
The appellee insists that his position on the train as a porter in the Pullman car in the employ of the Pullman company took him out of the class known as “ fellow servants,” and that he may recover his damages even though it should ap-pear the accident was occasioned by the negligence of those engaged in operating the train. It has been decided in this and other jurisdictions (Union Pacific Ry. Co. v. Kelley, 4 Colo. App. 325), that an express messenger who runs on a train looking after the business of the express company under contract between the express company and the railroad is not a fellow servant, and that none of the principles which control actions by fellow servants are operative. The appellee, of course, insists that as a Pullman porter he is brought into the same relations with the Railroad Company and may recover on proof of the happening of an accident like a passenger, who by making this proof thereby casts the burden on the Railroad Company to show care and due caution in the management and operation of their trains. This is probably a debatable question because of the relationship which the porter sustains to the passengers traveling, although the precise point has been adjudicated in favor of the porter in another state. We do not intend to decide this question. It may be conceded for the purposes of this opinion that the por *90 ter was a passenger, showed an accident, the extent of the injury and amount of his damages, and he might recover on this proof unless there was evidence exculpating the company. This we assume. There was no evidence tending to show that the Railroad Company was at all negligent in the management or operation of its train. There was no evidence that the accident resulted from the company’s negligence. On the other hand, there was precise and definite proof that the accident did not result from the company’s negligence, but from circumstances over which they had no control. According to the proof, the train struck the storm very shortly after leaving Antonito, and ran in and through it for some miles while they were climbing up the mountain. When they got to a point near the Farrow Cut, snow had fallen to the depth of nearly three feet. It was a severe storm, as was evidenced by the fact that it was necessary to use a snow plow and flanger in order to clear the way. It cannot be held negligent for a railroad company to organize and arrange its train for the purpose of pushing it up the mountain and over the grade and through the snow to make its regular time and connections, so long as due regard is had to the situation and the circumstances under which it is done. We must recur again to the evidence offered with reference to the running of a train with a snow plow ahead and a flanger behind and between the leading locomotive and those which are the real motive power of the train itself. While we concede there was some evidence tending to show that this was a dangerous method in which to' run a train, there was absolutely none that the accident came from this irregular construction. Under these circumstances, we do not understand that a cause of action necessarily comes to a plaintiff who may prove that a train is improperly made up, unless this is followed by other evidence which shall likewise demonstrate that those circumstances either had or might have had something to do with the accident. In this case there was a total want of such supporting testimony. The train had not reached the cut nor the curve at which the plaintiff alleges *91 the accident happened, nor was it derailed because it was made up in this way and running over the curve and through the cut. The train was on a straight piece of track which lay between the curve and Antonito, and was running at its usual schedule rate of about eighteen miles an hour. But for some very clear and persuasive evidence given on the subject, we might be unable to discover the cause, and might then agree with counsel for the appellee that if the cause was unexplained, and the jury should be convinced that the train was improperly made up, the verdict might be sustained. This, however, clearly demonstrates that the train was pushed off the track by a snow slide which came down the mountain. A snow slide had never been known at that point before, nor has one ever been heard of since, according to the record. To run a train made up in this way over that particular part of the road and under the specified circumstances is not therefore necessarily negligent, nor are we at all clear that the company could be adjudged negligent to attempt to run its train in a snow storm up this grade and over the divide. If this should be held, it would practically result in forcing a railroad company to cease the operation of its trains in snow storms and over the mountains through the greater part of the winter. The court and every body else knows that every winter all roads running through the mountains must operate their trains in snow storms, and they must make their connections in order to carry on their business, and they must arrange their trains for the purpose of furnishing force and power to meet the obstruction which the snow occasions. Of course, if it happens that a case is developed which demonstrates that the method by which the train was operated was a negligent one, tending to produce the accident complained of, the company would be held responsible. This is not such a case. The company had no reason to anticipate a slide at that point, nor is there anything in the record to show the train was being operated in a negligent or dangerous way, which contributed to the injury. All the evidence tends in a contrary direction. The snow slide came, struck *92 the train and pushed the cars off the track and down the hill. Whether on the subsequent trial of the case the plaintiff will be able to show that the method of operation had anything whatever to do with the accident we are unable to say. On the case as it stands he showed no negligence on the part of the company, but on the other hand the company proved due care and offered evidence which tended to show that the accident was occasioned by a circumstance over which they had no control and which their antecedent experience neither led them to expect nor obligated them to anticipate. Under these circumstances we regard the third instruction given by the court with reference to the formation of the train as prejudicial to the company, and one which ought not to have been given without other limitations and qualifications. It seems to us the situation of the case did not authorize the court to tell the jury if they found the train was made up in violation of its own rules and in a negligent and dangerous manner, and that by reason of this fact the cars were thrown off the track, they might find for the plaintiff, because there was nothing in the case to show this to be true. What the plaintiff proved, the evidence which the defendant offered, either or both together, wholly failed to warrant a finding that the accident resulted from the way in which the train was made up. If this be so, such an instruction of necessity operated to the prejudice of the defendant, because if the jury should find from the testimony the train was made up in violation of its rules, they would very readily conclude that this might have had something to do with it. Courts all thoroughly understand the tendency of juries in cases of this description, and nisi prius judges are bound to carefully limit and guard any instructions so as to protect the rights of the plaintiff as well guard the interests of the defendant. An instruction which is based on a hypothesis which the case does not warrant must necessarily be prejudicial, so long as there is evidence in the case to which it might be applied, although it may not be evidence which warranted it.
Some complaint is made of an instruction which the court *93 gave wherein it attempted to show the distinction between testimony and evidence. It is possible this instruction is justified by some lexicographer, and possibly by intimations in some adjudications. It is, however, far too refined for us, and we are unable to see its significance or its applicability-It was wholly unimportant and in no manner tended to enlighten the jury, and was probably perfectly harmless, and the case would not be reversed on that ground. Our suggestions are made in deference to counsel’s argument rather than because of the importance of the inquiry.
Before the case went to the jury, the company asked the court to put an interrogatory with reference to the cause of the derailment of the train and the rolling of the cars down the embankment. We do not understand that the refusal to put a specific interrogatory can be assigned as error. Possibly the court might have put the question and asked a specific answer, and the party could not have complained if the answer had been against him. These matters are so largely in the discretion of the court that a case is never disturbed because of what the court may have done. It would have been a very satisfactory inquiry, and the special finding of the jury thereon would probably have been controlling in determining the question whether the accident came from the negligence of the company or under circumstances which would be an absolute excuse if proven. We confess we should have been very glad if this fact had been directly determined by special verdict. If it had been found with the Railroad Company, it would be a perfect basis on which to rest this decision, which is simply our conclusion on the evidence without any direct knowledge of what the opinion of the jurors may have been regarding this particular fact.
It may seem rather hard to disturb so small a verdict in favor of one who was injured, and if the plaintiff’s ease had been sustained by any testimony Avhich seemed to warrant a recovery we might have found a way to affirm the judgment» Since the record is barren of evidence supporting it, we can *94 not do otherwise than reverse it, even though we subject the plaintiff to the expense of another trial.
The judgment will be reversed.

Reversed.